J-A35033-15

2016 PA Super 46

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| SUSAN SCHLEY, | : | |
| | : | |
| Appellant | : | No. 124 WDA 2015 |

Appeal from the Judgment of Sentence December 18, 2014
in the Court of Common Pleas of Allegheny County,
Criminal Division, No. CP-02-CR-0016445-2013

BEFORE: BENDER, P.J.E., SHOGAN and MUSMANNO, JJ.

OPINION BY MUSMANNO, J.: **FILED FEBRUARY 19, 2016**

Susan Schley ("Schley") appeals from the judgment of sentence imposed following her conviction of endangering the welfare of children ("EWOC").[1] We vacate the judgment of sentence and remand for further proceedings.

Schley and her husband, Charles Schley ("Charles"), are the adoptive parents (and aunt and uncle) of the complainant, L.S. ("the complainant"). When the complainant was five years old, she moved into the house of Schley and Charles (hereinafter "the Schley residence"), located in the Northside section of the City of Pittsburgh. The complainant resided in the Schley residence with several of her siblings and cousins, as well as the two biological children of Schley and Charles.

---

[1] 18 Pa.C.S.A. § 4304(a)(1).

The complainant testified that, on a few occasions, while she was a minor[2] and residing at the Schley residence, Charles made her touch his penis with her hand. According to the complainant, she informed Schley of these assaults on more than one occasion. The complainant stated that on each occasion, Schley would then ask Charles if the complainant was telling the truth about the assaults. Charles denied all of the accusations, after which Schley did nothing, and never called the police. Additionally, the complainant testified that Schley had said to her that "what happens at the house doesn't leave the house." N.T. (trial), 12/18/14, at 22.

In October 2013, the Commonwealth charged Schley with EWOC, graded as a first-degree misdemeanor. Prior to trial, Schley filed a Motion *in limine*, seeking to introduce at trial evidence of the complainant's having previously made three false sexual assault allegations against non-family members (hereinafter "the false sexual assault allegations"). The trial court summarized the false sexual assault allegations as follows:

> [T]he [complainant's] first [allegation] alleged [that] she had been assaulted in a restroom at Oliver High School, which was later disproved with the school surveillance videos[,] and [was] then recanted by [the complainant]; the second alleged [that the complainant] had been dragged into an abandoned home on her way home from school and sexually assaulted, which [the complainant] later recanted to her counselor and [Schley] during a counseling [session]; and the third alleged [that the complainant] was assaulted by her roommate at the Circle C facility[,] after she had been removed from the [Schley residence], which was disproved by the testimony of a third roommate[,] and later recanted by [the complainant]. In each

---

[2] At the time of trial, the complainant was twenty years old. She resided in the Schley residence until she was seventeen years old.

- 2 -

instance[,] the allegations were made against a non-family member and did not relate to the abuse which gave rise to the instant charges.

Trial Court Opinion, 5/20/15, at 2-3; *see also* N.T., 12/18/14, at 4 (wherein the prosecutor stated that "[the complainant] reported [the first alleged sexual assault at her high school] to [Schley]. [Schley] then went to the school and met with authorities and [the complainant]. It was disproved by their investigation[,] and then[,] as a result[, the complainant] refuted the allegation").

Shortly before Schley's trial, Charles pled guilty to felony EWOC concerning his sexual assaults of the complainant. *See* N.T., 12/18/14, at 50.

On December 18, 2014, Schley's case proceeded to a non-jury trial. Before trial commenced, the trial court denied Schley's Motion *in limine*, ruling that the defense could not introduce into evidence the false sexual assault allegations, pursuant to Pennsylvania's Rape Shield Law ("RSL").[3]

The complainant was Commonwealth's sole witness at trial.[4] Schley testified in her own defense, maintaining that that complainant never informed her that Charles had sexually assaulted the complainant. At the close of trial, the trial court found Schley guilty of EWOC, and immediately sentenced her to serve three years of probation.

---

[3] *See* 18 Pa.C.S.A. § 3104.

[4] The Commonwealth did not introduce any physical evidence, and presented no witnesses aside from the complainant.

- 3 -

Schley timely filed a Notice of Appeal. In response, the trial court ordered her to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Schley timely filed a Concise Statement. The trial court then issued a Pa.R.A.P. 1925(a) Opinion.

Schley presents the following questions for our review:

I. Did the trial court commit reversible error by excluding from trial evidence of the [false sexual assault allegations] on the basis that such evidence was barred by the R[SL]?

II. Did the trial court commit reversible error by excluding from trial evidence of the [false sexual assault allegations] when this information was probative of a number of material issues in the case?

III. Was the evidence insufficient as a matter of law to convict [Schley] of endangering the welfare of children when the Commonwealth failed to prove beyond a reasonable doubt that [] Schley actually was aware that the complainant was in circumstances that threatened her physical or psychological welfare?

Brief for Appellant at 5 (capitalization omitted).

We will address Schley's first two issues simultaneously, as they both concern the trial court's denial of her Motion *in limine*, and its ruling that the false sexual assault allegations are inadmissible under the RSL.

When reviewing a trial court's denial of a motion *in limine*, this Court applies an evidentiary abuse of discretion standard of review. ***Commonwealth v. Orie***, 88 A.3d 983, 1022 (Pa. Super. 2014). "An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or

misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Commonwealth v. Alicia*, 92 A.3d 753, 760 (Pa. 2014).

This Court has stated the well-established standard of review for admission of evidence claims as follows: "[I]n reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. … To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Commonwealth v. Lopez*, 57 A.3d 74, 81 (Pa. Super. 2012) (citation omitted); *see also Commonwealth v. K.S.F.*, 102 A.3d 480, 483 (Pa. Super. 2014) (stating that a trial court's ruling on the admissibility of evidence of the sexual history of a sexual abuse complainant will be reversed only where there has been a clear abuse of discretion).

The RSL, codified at 18 Pa.C.S.A. § 3104, provides as follows:

Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter[,] except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

*Id.* § 3104(a). The RSL was enacted to "prevent a trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim … [and] to exclude irrelevant and abusive inquiries regarding prior

sexual conduct of sexual assault complainants." **K.S.F.**, 102 A.3d at 484 (citations omitted); **see also id.** at 483-84 (stating that "[e]vidence that tends to impeach a witness' credibility is not necessarily inadmissible because of the R[SL].").

Schley first argues that "the R[SL], by its plain language, does not apply in a prosecution for endangering the welfare of children[,] and therefore could not operate to exclude evidence within its purview." Brief for Appellant at 16 (citing **In re M.K.**, 636 A.2d 198, 203 (Pa. Super. 1994) (stating that "[t]he scope of the RSL's application is limited to criminal prosecutions relating to sexual offenses.")). Schley points out that the RSL, which is contained in Chapter 31 of the Crimes Code,[5] expressly provides that it applies only to "prosecutions **under this chapter**[.]"[6] Brief for Appellant at 15 (quoting 18 Pa.C.S.A. § 3104(a)) (emphasis added). According to Schley, the plain meaning of "prosecutions under this chapter" is clear and unambiguous. **See** Reply Brief for Appellant at 3 (asserting that "there is no interpretation of the phrase 'prosecutions under this chapter' that would permit this Honorable Court to conclude that it means anything other than 'prosecutions under Chapter 31.'"); **see also id.** (arguing that "if

---

[5] Chapter 31, 18 Pa.C.S.A. §§ 3101 *et seq.*, concerns "sexual offenses." The sole crime for which Schley was prosecuted, EWOC, is not contained within Chapter 31; rather, it is contained within Chapter 43 of the Crimes Code (concerning "offenses against the family").

[6] The Crimes Code, Title 18, is divided into numerous Chapters. The definitions provision of the Crimes Code, 18 Pa.C.S.A. § 103, does not define the word "chapter" or the phrase "under this chapter."

the legislature did not intend for the R[SL] to be limited to offenses arising out of Chapter 31, it would have said so in the statute. The salient fact remains that the legislature did not.").

In response, the Commonwealth protests that to interpret the RSL in the manner that Schley proposes would yield an absurd result. Brief for the Commonwealth at 11 (citing 1 Pa.C.S.A. § 1922(1) (provision of the Statutory Construction Act ("SCA"), 1 Pa.C.S.A. § 1901 *et seq*., providing that, in ascertaining the intention of the legislature in interpreting a statute, it is presumed that the legislature did not intend a result that is absurd)); *see also* Brief for the Commonwealth at 12 (stating that "[t]he absurdity of the position championed by [Schley] is illustrated best by the example of an individual alleging that she had been the victim of an attempted rape. A defendant charged with attempted rape is prosecuted under 18 Pa.C.S.[A.] § 901, which, obviously, is not an offense under Chapter 31. Thus, if [Schley's] argument is accepted, the victim in such a case would not be protected by the R[SL,]" *i.e.*, if attempted rape was the *sole* charge against the defendant).

Because the question before us centers on the interpretation of the phrase "under this chapter" within section 3104(a), we must turn to the SCA. Pursuant to the SCA, the objective of all interpretation and construction of statutes is to ascertain and effectuate the intention of the legislature. 1 Pa.C.S.A. § 1921(a). The SCA requires that a reviewing court give full meaning and effect to all words of a statute. **Id.** The best

indication of this intent is the plain language of the statute. **Commonwealth v. Taylor**, 104 A.3d 479, 490 (Pa. 2014). If the words of a statute are clear and unambiguous, we should not look beyond the plain meaning of the statutory language "under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b); **see also id.** § 1903(a) (providing that "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage …."). "Only in the event of an ambiguity may we consider other aspects of the statute and the statutory process, and may we discern the General Assembly's intent by considering, *inter alia*, the various factors listed in the S[CA], **Id.**[] § 1921(c)."[7] **Commonwealth v. Lynn**, 114 A.3d 796, 818 (Pa. 2015). Finally, the SCA requires penal provisions of statutes to be strictly construed. 1 Pa.C.S.A. § 1928(b)(1).

Applying the rules of statutory construction, we conclude that the phrase "under this chapter" in the RSL is (1) unambiguous; and (2) clear according to its common usage. **See id.** § 1903(a); **see also** 18 Pa.C.S.A. § 105 (provision of the Crimes Code stating generally that "[t]he provisions of this title shall be construed according to the fair import of their terms …."). We must give effect to the legislature's inclusion of the language "**this** chapter" in section 3104 (which is part of Chapter 31). **See Commonwealth v. Donahue**, 98 A.3d 1223, 1238 (Pa. 2014) (stating that under the SCA, a statute "must 'be construed, if possible, to give effect to all

---

[7] One of the factors listed in section 1921(c) is "[t]he consequences of a particular interpretation." 1 Pa.C.S.A. § 1921(c)(6).

its provisions,' so that no provision is reduced to mere surplusage.") (quoting 1 Pa.C.S.A. § 1921(a)). By using the terminology "prosecutions under **this** chapter[,]" the legislature clearly intended to limit the application of the RSL to prosecutions under Chapter 31. Though we can appreciate the Commonwealth's foregoing argument concerning the potential consequences of this interpretation of the RSL, we are compelled to rule, for purposes of the instant case, that because the plain language of section 3104 is clear and unambiguous, we may neither (1) look beyond the plain meaning of the language under the pretext of pursuing its spirit, 1 Pa.C.S.A. § 1921(b); nor (2) consider the consequences of a particular interpretation. ***Id.*** § 1921(c)(6). Accordingly, because the sole crime for which the Commonwealth prosecuted Schley, EWOC, is not contained within Chapter 31, the RSL did not apply to her prosecution.

Schley additionally contends that even if the RSL's "application is not limited to prosecutions for sexual offenses under Chapter 31, the RSL still would not have barred [the false sexual assault allegations] because such evidence did not concern [the complainant's] 'past sexual conduct' and did not reflect on her reputation for chastity." Brief for Appellant at 17; ***see***

*also id.* at 18-26.[8]  We agree.

In support of her argument, Schley primarily relies upon the Pennsylvania Supreme Court's decision in ***Commonwealth v. Johnson***, 638 A.2d 940 (Pa. 1994).  In that case, a mentally handicapped child accused the defendant of sexually assaulting her.  *Id.* at 941.  At trial, the defendant attempted to introduce evidence that the victim had previously complained to a friend that another male (one of the Commonwealth's witnesses) had sexually harassed her.  *Id.*  The defendant wanted to introduce this evidence to argue that the victim was casting blame for the assault on the defendant at the instigation of the other male, whom she feared.  *Id.*  The defendant asserted that this evidence was critical to undermine the credibility of the victim.  *Id.* at 941-42.

The Supreme Court in ***Johnson*** held that the RSL was not intended to prohibit the evidence the defendant wished to introduce, as it did not concern "conduct" of the victim that would reflect upon her reputation for chastity.  *Id.* at 942.  More specifically, the Court held that the statutory word "conduct" in the RSL does not include prior sexual assaults.  *Id.*

---

[8] The Commonwealth does not oppose Schley's claim in this regard.  ***See*** Brief for the Commonwealth at 13 (stating that "the Commonwealth does not necessarily believe that [Schley] is wrong when she contends that even if the application of the R[SL] is not limited to prosecutions under Chapter 31, the [false sexual assault allegations] still should not have been deemed inadmissible by the trial court under [section] 3104 because the evidence did not concern the [complainant's] 'past sexual conduct[.']"); ***see also id.*** at 14 (stating that evidence of the false sexual assault allegations "would not constitute past sexual 'conduct,' and, thus, the Commonwealth would agree with [Schley] that, to the extent that [the trial court] ruled that such evidence was inadmissible under the R[SL], such a ruling was incorrect.").

However, the Court explained that evidence of prior sexual assaults is admissible only if is relevant and material under the traditional rules of evidence. *Id.*[9]

> Schley contends that, in contrast to **Johnson**,

> [i]n the instant case, [] Schley sought to admit evidence *not* that the complainant had been a victim of a previous sexual assault, but evidence of the complainant's propensity to fabricate claims of sexual assault. It would be even more illogical to conclude that the [RSL] intended to prohibit this type of testimony, especially when it [related to] … the complainant's propensity to fabricate claims of sexual assault[,] and [such testimony] did not concern her "past sexual conduct" or reflect on her reputation for chastity.

Brief for Appellant at 19 (emphasis in original). We agree and determine that under **Johnson**, because the false sexual assault allegations did not concern the complainant's past sexual conduct, the RSL did not prohibit such evidence. **See Johnson**, 638 A.2d at 942.

However, this determination does not end our inquiry as to the admissibility of the false sexual assault allegations; we must address whether the testimony is relevant and material under the rules of evidence. **See id.**; **see also** Pa.R.E. 401 (providing that evidence is relevant where "it has any tendency to make a fact more or less probable than it would be without the evidence" and it "is of consequence in determining the action.").

Schley argues that, unlike the situation in **Johnson**, the false sexual assault allegations were relevant and material, as this evidence was

---

[9] Ultimately, the Court concluded the testimony proffered by the defendant was not relevant, and therefore inadmissible. **Johnson**, 638 A.2d at 943.

probative of (1) "an element of the crime [for] which [] Schley was charged – intent. … Proof beyond a reasonable doubt that [] Schley possessed the requisite *mens rea* was necessary to obtain a conviction under the endangering the welfare of children statute, and evidence of the complainant's propensity to fabricate claims of sexual assault bears directly on [] Schley's state of mind in responding to yet another such allegation[,]"[10] Brief for Appellant at 21-22; and (2) the complainant's lack of credibility, as her testimony was the only evidence presented by the Commonwealth. *See id.* at 24-25. According to Schley,

> evidence of the … [false] sexual assault [allegations] … was highly probative of [Schley's] reasonable belief that the complainant's allegation against [Charles] was just one more in a series of fabrications, and [Schley's] conclusion that the latest allegation was similarly untruthful. In other words, the excluded evidence was probative of whether [] Schley *actually was aware that the complainant was in* circumstances that could have threatened her physical or psychological welfare.

*Id.* at 23 (emphasis in original) (citing *Commonwealth v. Cardwell*, 515 A.2d 311, 314 (Pa. Super. 1986) (stating that the crime of EWOC requires a showing of a knowing violation of a duty of care)).

The Commonwealth counters that evidence of the false sexual assault allegations was not relevant and thus properly excluded by the trial court. *See* Brief for the Commonwealth at 15-18. Initially, the Commonwealth points out that Schley testified, contrary to the complainant's testimony,

---

[10] As noted above, concerning two of the false sexual assault allegations, the complainant had recanted the allegations to Schley, after Schley had investigated the allegations.

that the complainant never informed her that Charles had sexually assaulted

the complainant. *Id.* at 16 (citing N.T., 12/18/14, at 35, 38, 41, 44). The

Commonwealth argues that

> thus, the issue to be decided by [the trial court] was *not* whether [Schley] had a reasonable basis for not taking the [complainant's] accusations [against Charles] seriously but, rather, whether or not the [complainant] had told [Schley] at all about what Charles [] had done to her. The fact that the [complainant] may have previously lied about other people having sexually assaulted her – allegations that [Schley] admits that she knew about – certainly did not make it more probable that [Schley] did not know about the allegations that the [complainant] had levied against Charles[].

Brief for the Commonwealth at 16 (emphasis in original, footnote omitted).

We are unpersuaded by the Commonwealth's argument. Importantly,

the trial court denied Schley's Motion *in limine*, and precluded admission of

the false sexual assault allegations, *before* the trial commenced. In this

regard, we are persuaded by Schley's assertion that "by denying [] Schley's

[M]otion *before* trial, the trial court's decision inherently affected [] Schley's

overall theory of defense and trial strategy, including, among other things,

her decision whether or not to testify." Reply Brief for Appellant at 11

(emphasis in original).

Accordingly, we conclude that the trial court erred as a matter of law

in ruling that the RSL prohibited Schley from introducing the false sexual

assault allegations at trial, and such ruling prejudiced Schley.[11]

In her final issue, Schley argues that her conviction must be reversed as being unsupported by sufficient evidence, which claim we review under the following standard:

> The standard we apply … is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted); *see also Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa.

---

[11] In so holding, we observe that the trial court's error was not harmless. *See Lopez, supra* (stating that "[t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party."); *see also Commonwealth v. Hairston*, 84 A.3d 657, 671-72 (Pa. 2014) (setting forth the standard for harmless error). Here, because the complainant's testimony was the only evidence presented against Schley, it cannot be said that the trial court's error in precluding Schley from introducing the false sexual assault allegations did not contribute to the guilty verdict. *See Commonwealth v. Luster*, 71 A.3d 1029, 1046 (Pa. Super. 2013) (*en banc*) (stating that "an error may be considered harmless only when the Commonwealth proves beyond a reasonable doubt that the error could not have contributed to the verdict.") (citation omitted).

2000) (stating that the Commonwealth is entitled to all reasonable inferences arising out of evidence presented).

The crime of EWOC is defined, in relevant part, as follows: "A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits a misdemeanor of the second degree if he [or she] *knowingly* endangers the welfare of the child by violating a duty of care, protection or support."  18 Pa.C.S.A. § 4304(a)(1) (emphasis added); ***see also Commonwealth v. Cardwell***, 515 A.2d 311, 314 (Pa. Super. 1986) (analyzing the section of the Crimes Code that defines kinds of culpability, 18 Pa.C.S.A. § 302(b), and stating that "[i]f a violation of a duty of care can include an omission, then, a person can act 'knowingly' in omitting to act with respect to that duty.")).

> Because the crime of EWOC is a specific intent crime, and the intent required is the knowing violation of a duty of care, the Superior Court has long interpreted the intent element to require that: (1) the accused is aware of his/her duty to protect the child; (2) the accused is aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and (3) the accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

***Commonwealth v. Lynn***, 114 A.3d 796, 819 (Pa. 2015) (internal citations omitted).

Here, Schley argues that the Commonwealth failed to establish the intent element of EWOC for the following reasons:

> The evidence in the present case, when taken in the light most favorable to the Commonwealth as the verdict winner, established that the complainant told [] Schley of [Charles's]

- 15 -

> inappropriate conduct that that [] Schley confronted [Charles] about said allegations, which [Charles] denied. … The Commonwealth presented no evidence that [] Schley personally observed sexual abuse of the complainant at the hands of [] Schley; for example, by walking in on such abuse. Moreover, the evidence failed to establish that [] Schley had any reason to even suspect [that sexual] abuse [by Charles] was occurring, independent of the complainant's allegations. [] Schley's decision to not report the complainant's allegations to authorities clearly indicated that she chose to credit [Charles's] version of events over the complainant's. And while [Schley's] decision may have been a mistake in judgment that "potentially" endangered the complainant, the evidence does not establish as a matter of law that [] Schley knew [that] she placed the complainant in circumstances that threatened her physical or psychological welfare.

Brief for Appellant at 33-34 (emphasis and paragraph break omitted). In support of her claim, Schley relies primarily upon **Commonwealth v. Miller**, 600 A.2d 988 (Pa. Super. 1992), which, Schley contends, is analogous to the instant case. **See** Brief for Appellant at 31-32, 34.

In **Miller**, this Court reversed the defendant/mother's conviction for EWOC, where her infant child had died in a residential fire, on the basis that the evidence was insufficient to establish that the defendant "knowingly" allowed the child to sleep unattended while defendant and the child's father went out "clubbing," after the father had falsely assured the defendant that the child would be watched by a tenant in the apartment building. **Miller**, 600 A.2d at 991 (holding that "we cannot find as a matter of law that [the defendant] was aware that she had placed her child in circumstances that threatened the child's physical or psychological welfare or that her failure to check on the alleged babysitting arrangements was unreasonable ….").

Concerning the applicability of **Miller** to the instant case, the Commonwealth counters that

> [although it] agrees with [Schley] that where the evidence suggests that a defendant believes that the welfare of a child in her care is not endangered, the defendant is not guilty of endangering the welfare of that child, even if that belief turns out to be incorrect[,] [Schley's] sufficiency claim fails here because the evidence did, in fact, show that she believed that the [complainant] had been sexually abused by [Charles].

Brief for the Commonwealth at 21-22. We agree.

The evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, established that Schley knew about Charles's sexual assaults of the complainant,[12] but encouraged the complainant to not report the assaults to the authorities. The complainant testified that Schley, in response to the complainant's bringing these assaults to Schley's attention, had stated to the complainant, "what happens at the house doesn't leave the house." N.T., 12/18/14, at 22. Moreover, when the complainant was asked why she had never reported these assaults to personnel at her school, she replied that "we wasn't [sic] allowed to talk about it." *Id.* The trial court, as the fact-finder, was free to draw a reasonable inference from this evidence

---

[12] Although Schley testified, contrary to the complainant's testimony, that the complainant never informed Schley of any sexual assaults, the trial court, as the fact-finder, ostensibly found the complainant to be more credible. **See Commonwealth v. Hall**, 830 A.2d 537, 542 (Pa. 2003) (stating that "[i]n instances where there is conflicting testimony, it is for the [fact-finder] to determine the weight to be given the testimony.") (citation omitted). We may not re-weigh the evidence or substitute our judgment for that of the fact-finder on matters of credibility. **See Melvin**, 103 A.3d at 39-40.

that Schley knew that the assaults occurred, but that she had pressured the complainant to not report them.

Accordingly, while we conclude that the Commonwealth presented sufficient evidence to establish all of the elements of EWOC, in light of the trial court's above-mentioned error in prohibiting admission of the false sexual assault allegations into evidence, we vacate Schley's judgment of sentence and remand for a new trial, wherein Schley may introduce such evidence at trial.

Judgment of sentence vacated. Case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/2016