J-S60028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ERIC TROY FUEHRER | |
| Appellant | No. 2293 EDA 2015 |

Appeal from the Judgment of Sentence June 29, 2015
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0007839-2013

BEFORE:  SHOGAN, J., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.:                          **FILED OCTOBER 03, 2016**

Eric Troy Fuehrer appeals from the judgment of sentence imposed on June 29, 2015, in the Court of Common Pleas of Montgomery County, following his conviction by jury on the charges of aggravated assault, conspiracy to commit aggravated assault and simple assault.[1]  He received an aggregate sentence of 11 to 22 years' incarceration followed by five years of probation.  In this timely appeal, Fuehrer raises one issue; he claims the trial court erred in admitting into evidence a text message purportedly from Fuehrer, without proper authentication.  After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a)(1), 903(a)(1), and 2701(a)(1), respectively.

The evidence presented at trial demonstrated Fuehrer and co-defendant, Eric William Dunn, assaulted the victim, Christopher Thomas, on the evening of October 2, 2013 on a sidewalk in Norristown, Pennsylvania. Thomas was severely injured, suffering multiple facial fractures and loss of teeth. Thomas was airlifted from Mercy Suburban Hospital to Jefferson Medical Hospital, in Philadelphia, for treatment. Thomas identified both men as his assailants, and both men were arrested later that night.

An independent witness, Brenda Nixon, who coincidentally works for the Montgomery County District Attorney's Office, witnessed what she believed to be an assault while on her way home from work. She testified she saw two men who appeared to be kicking someone or something on the ground. She could not tell what the object of the violence was because of the parked cars at the curb. Nonetheless, she was worried enough to call 9-1-1 and report the incident.

By the time the police arrived, shortly after Nixon's call to 9-1-1, all they found at the site was a pool of blood and the blood-stained hood of a car immediately nearby.

Two other eyewitnesses testified, both of whom identified Dunn as the sole assailant. The first of these witnesses, Deborah Thomas, testified she did not witness the entire assault, but only came out onto the street after hearing a commotion. Deborah Thomas is the victim's sister. Deborah

Thomas also testified that shortly after the assault, she confronted Fuehrer, accusing him of "pointing the finger at her brother".[2]  Deborah Thomas testified Fuehrer replied that he had "no control over his workers."[3]  Thomas further testified Fuehrer, shortly before the assault, had asked her to sell drugs for him.

The second eyewitness, was Tanea Jones.  Her relationship with Fuehrer is unclear.[4]  She testified that she, Dunn and Fuehrer were sitting on the front steps of her apartment building in Norristown, when Thomas walked by and went into the next-door building.  Jones claimed she did not know Thomas, but had seen him around the neighborhood and referred to him as the "the guy with the big eyes."[5]  When Thomas left the next-door building shortly thereafter, he said something to Dunn and then attempted to punch Dunn in the face.  The two men then fought briefly, Thomas had a bloody mouth, but no one kicked Thomas.  Fuehrer's only participation in the event was to pull Dunn away from the fight.

_____

[2] **See** Trial Court Opinion, 9/23/2015, at 4; N.T., 2/10/2015, at 121.

[3] **Id**.

[4] At various points in the certified record, she claimed not to be related to Fuehrer or to have been a cousin, step-cousin, or play cousin of Fuehrer. **See** N.T. Trial, 2/10/2015, at 250-251.

[5] **Id**. at 241.

Mako Henderson, Christopher Thomas's nephew, testified he was not at the scene of the fight, but received a phone call informing him his uncle was being beaten. He immediately left to go to the scene. When he arrived, no one was there, so he then went to his uncle's residence. When he arrived there he saw his uncle had been beaten, was bleeding from his face and mouth, and his face was swollen. He then drove his uncle to Suburban Mercy Hospital. Henderson knew Dunn and was childhood friends with Fuehrer. Henderson described two text messages he received from Fuehrer. The first was dated September 15, 2013 and said, "I thought we had an understanding." Henderson believed this message referred to Fuehrer's attempt to have Henderson sell drugs for him.

The second text message is the subject of this appeal. That message was sent from Fuehrer's cell phone almost immediately after the assault and stated,

> I told u I got love for u like a brother. But it's a green light on the rest of your team and its out of. [sic] My hands :(

*See* N.T. Trial, 2/10/2015 at 192; Commonwealth Exhibits 8 and 9.[6]

We note that there was no dispute that the cell phone in question was Fuehrer's; Norristown Police Corporal testified Fuehrer gave him the passcode to unlock the cell phone and to read the text messages.

_____

[6] Exhibits 8 and 9 are photocopies of Fuehrer's cell phone showing the message sent and Henderson's cell phone showing the same message received.

Fuehrer has not argued the text message in question did not come from his phone. Rather, he argues the Commonwealth provided insufficient evidence of authentication that he authored the message. Accordingly, he claims the trial court erred in admitting the text message into evidence.

The often-repeated standard of review concerning a challenge to the admission of evidence is:

> [I]n reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law.... To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

***Commonwealth v. Schley***, 136 A.3d 511, 515 (Pa. Super. 2016) (citation omitted).

Specifically addressing the text messages, our courts have held:

> [A]uthentication of electronic communications, like documents, requires more than mere confirmation that the number or address belonged to a particular person. Circumstantial evidence, which tends to corroborate the identity of the sender, is required.

***Commonwealth v. Koch***, 39 A.3d 996, 1005 (Pa. Super. 2011) (citation omitted), *aff'd*, 103 A.3d 705 (Pa. 2014) (per curiam).[7]

Here, the trial court determined there was sufficient circumstantial evidence to support the admission of the text message into evidence. Our

---

[7] The Superior Court decision was affirmed by an evenly divided Supreme Court.

review of the certified record finds no abuse of discretion in that determination.

In **Koch**, the Commonwealth introduced a text message from a cell phone that had admittedly been used by people other than the defendant. Many of the text messages sent in proximity to the texts in question were clearly sent by others. While the text messages at issue were relevant in that they referred to drug dealing, there was nothing inherent about the messages to lead an observer to believe the defendant had authored them. Accordingly, in reversing the trial court, our Court held that other indicia were required to authenticate a text message.

In the instant matter, there was no indication anyone other than Fuehrer used his phone. The phone required a passcode; Fuehrer possessed that code and gave that code to the police so they could view the text messages. **See** N.T. Trial, 2/10/2015, at 165-66. Most importantly, Henderson, who received the message, believed it came from Fuehrer and explained the context in which the message was sent, received and understood. That is, Fuehrer wanted Henderson and his "team" to sell drugs for him and Fuehrer would not protect anyone other than Henderson from the consequences of not selling drugs. It must be remembered that Henderson's aunt, Deborah Thomas also testified that Fuehrer asked her to sell drugs for him.

Further, we note the language of the message indicates it was sent from a person who had a past relationship with Henderson, saying the two

- 6 -

men were like brothers; Henderson and Fuehrer had been friends since childhood.

The message at issue was undeniably sent from Fuehrer's phone and the nature of the message is a veiled threat from someone who knew Henderson well. There is no evidence in the record of any person, other than Fuehrer, who knew Henderson well and who had reason to issue such a threat.

Contrary to Fuehrer's assertion, our review of the certified record demonstrates there was sufficient circumstantial evidence to authenticate the text message as having been authored by Fuehrer. Therefore, the trial court neither abused its discretion nor committed an error of law in admitting the text message into evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/3/2016