J-S38024-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| JOHNSON N. PORKA | : | |
| Appellant | : | No. 1208 EDA 2018 |

Appeal from the Judgment of Sentence February 12, 2018
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0002393-2016

BEFORE:   OTT, J., DUBOW, J., and COLINS*, J.

MEMORANDUM BY DUBOW, J.:                    **FILED OCTOBER 28, 2019**

Appellant, Johnson N. Porka, appeals from the February 12, 2018 Judgment of Sentence entered in the Delaware County Court of Common Pleas following his jury conviction of Rape of a Mentally Ill Disabled Person, Sexual Assault, and Institutional Sexual Assault.[1]  Appellant challenges the admission of certain testimony and photographs, and the sufficiency of the evidence. After careful review, we affirm.

In the early morning hours of March 6, 2016, Pennsylvania State Police responded to a call prompted by an eyewitness that Appellant had raped a resident of the Elwyn Institute[2] in Media, Delaware County, where he worked

_____

[1] 18 Pa.C.S §§ 3121(a)(5), 3124.1, and 3124.2(a), respectively.

[2] The Elwyn Institute is a licensed residential facility for intellectually disabled people.  The victim is an autistic woman resident with a chronological age of 39 and an intellectual age of 3.

_____

as a residents' life staff member. An ambulance transported the victim to the hospital where she underwent a rape kit examination over the next 12 hours. Following an investigation, the Commonwealth charged Appellant with the above crimes.

Appellant filed a Pre-Trial Motion *in Limine* seeking to prevent the Commonwealth from introducing photographs of the victim's genitals taken during her rape examination,[3] arguing that they would "upset the jury[.]" N.T., 5/10/17, at 9. The Commonwealth objected, explaining that "the pictures are important to the jury's understanding, you know, of how [rape] examinations are done[,]" and "more importantly . . . these photos show the actual injuries the Commonwealth is going to argue were inflicted by [Appellant]." *Id.* at 8. The Commonwealth further explained that the photographs "show internal injuries, internal to the vagina and also bruising on the victim's legs" and argued that "the jury has the right to see what the injuries are." *Id.* The court denied Appellant's Motion *in Limine*, ruling that "to the extent the [examination] nurse will be talking about the injuries and can identify them in the photographs and indicate that they are a true and accurate depiction of the condition of the [victim] at the time of the examin[ation], I will allow it." *Id.* at 9.

Appellant's two-day jury trial commenced on May 10, 2017. At trial, the Commonwealth presented the testimony of Emanuel Kparyel, an Elwyn

---

[3] The victim, who is non-verbal, did not attend Appellant's trial.

employee and eyewitness to the crime; the victim's father; and three other employee of the Elwyn Institute. In addition, Colleen Hunt, a Sexual Assault Nurse Examiner at Riddle Memorial Hospital testified regarding her examination of the victim.

Mr. Kparyel testified that while conducting his rounds between 12:00 AM and 12:30 AM, he observed that the door to the victim's room was almost completely closed and that, strangely, the bathroom door was open in a way that blocked his direct line of sight into the room. *Id.* at 83. He decided to check on the victim by entering her room through the communal bathroom the she shared with the resident in the adjacent room. *Id.* at 86, 88. Mr. Kparyel testified that when he entered the victim's room, he saw Appellant on the victim's bed in a "crouched position in between" the victim's "raised" legs. *Id.* at 89, 91. He also testified that he noticed that the victim's pajama pants were pulled down to about her ankles and that Appellant's pants were "pulled down a little bit" and "looked folded." *Id.* at 89-90. Mr. Kparyel specified that the victim's feet were by Appellant's armpits and Appellant was holding the victim's legs up from underneath her knees. *Id.* at 90-91. Mr. Kparyel testified that this sight shocked him and he reacted by calling out Appellant's name twice. *Id.* at 92. Mr. Kparyel testified that Appellant responded by immediately apologizing, and continuing to apologize repeatedly. *Id.* at 92-100. Mr. Kparyel also described Appellant, who is of Liberian decent, performing a Liberian cultural gesture signifying that he was begging for Mr.

Kparyel's forgiveness.  *Id.* at 100-01.  Mr. Kparyel testified that, ultimately, he reported Appellant to his supervisor, Bintu Wilks.  *Id.* at 99.

At the commencement of the testimony of Ms. Hunt, Riddle Hospital's Sexual Assault Nurse Examiner, the Commonwealth submitted Ms. Hunt's CV to the court.  Ms. Hunt testified that she obtained her Bachelors of Science degree in Nursing from Immaculata University, graduated with high honors, and became a certified sexual assault nurse examiner by competing 40 hours of training in 2012.[4, 5]  N.T. 5/10/17, at 173-75.  At the time of Appellant's trial, she had completed 25 sexual assault exam kits.  *Id.* at 175.

Ms. Hunt testified in detail about the process by which a Sexual Assault Nurse Examiner swabs a victim's body to collect DNA evidence.  *Id.* at 176-79.  She testified that she attempts to collect DNA samples on the swabs when a victim alleges that penetration has occurred, but she is not sure whether the forensic laboratory will find DNA on the swabs in every case.[6]  *Id.* at 179-80.  When the Commonwealth then asked Ms. Hunt "is it your understanding that

---

[4] Ms. Hunt explained that a sexual assault nurse examiner is a nurse who collects evidence from a sexual assault victim by, among other things, interviewing the victim and swabbing her for DNA evidence.  N.T., 5/10/17, at 175-76.

[5] Ms. Hunt testified that she did not obtain a certification in forensic nursing, which is the "highest certification."  N.T., 5/10/17, at 175.

[6] The Commonwealth stipulated that forensic examiners did not identify Appellant's DNA on the victim.  N.T., 5/10/17, at 3.

every time penetration is alleged, DNA is recovered," Appellant objected, arguing that Ms. Hunt had already answered this question.[7] *Id.* at 179. The court overruled Appellant's objection and Ms. Hunt restated her prior response that "I'm attempting to collect [DNA], but I do not know the outcome." *Id.*

With respect to Ms. Hunt's examination of the victim, Ms. Hunt testified that the victim's demeanor was "anxious" and "uncooperative" upon her arrival at Riddle Hospital and for hours afterward.[8] *Id.* at 183-84. Ms. Hunt testified that, given the victim's agitated state, it took almost 12 hours to complete the victim's sexual assault examination. *Id.* at 190-93. Ms. Hunt explained that the examination process normally takes about three to four hours, and that the passage of time can negatively affect an examiner's ability to collect DNA. *Id.* at 193. She also testified that the victim had urinated at least twice before Ms. Hunt performed the sexual assault examination, which makes DNA collection even less likely. *Id.* at 185-87, 193.

Ms. Hunt further testified that she located bruising on the victim's left knee. *Id.* at 196. The Commonwealth asked Ms. Hunt how recently the victim had sustained those bruises. *Id.* Appellant objected to Ms. Hunt providing

---

[7] Appellant's counsel specifically objected on the grounds that Ms. Hunt had "already qualified that she can't answer that question." N.T., 5/10/17, at 179.

[8] Ms. Hunt testified that she administered two doses of Ativan and two doses of Haldol before the victim calmed down enough so that Ms. Hunt could perform the sexual assault examination. N.T., 5/10/17, at 187-88.

this testimony without a "baseline." *Id.* The Commonwealth rephrased the question asking instead, and without further objection, "based on [your] knowledge, experience, and training as a sexual assault nurse examiner and based on your review of the coloring of the bruises . . . [when] would you say those bruises were caused?"[9] *Id.* at 196-97. Ms. Hunt testified that it was a newer bruise caused within 24 hours prior to the examination. *Id.* at 197.

Ms. Hunt also testified that she observed two lacerations and deep purple bruising in the nature of a contusion on the victim's right vaginal wall. *Id.* at 200-01. Ms. Hunt testified, without objection, that a contusion inside the victim's vagina is an "abnormal finding" that "could be considered a blunt force trauma injury" sustained within the previous 24 hours. *Id.* at 202-03, 209. Ms. Hunt identified the injuries to which she testified in the photographs that the court had admitted as Commonwealth exhibits. *Id.* at 204-10. Appellant renewed his objection to the admission of the photographs, and the court overruled his objection. *Id.* at 204-05.

Appellant did not present any witness testimony.

At the conclusion of Appellant's trial, the jury returned a guilty verdict on each of the charged offenses.

On February 12, 2018, the trial court sentenced Appellant to an aggregate term of seven to fifteen years' incarceration. On February 22,

---

[9] By way of background, Ms. Hunt testified that she was also a wound care nurse and part of the "dermal defense team" and, thus, had specific training with respect to bruising. N.T., 5/10/17, at 195.

2018, Appellant filed a Post-Sentence Motion to Modify Sentence, which the court denied on March 27, 2018. This timely appeal followed.

Appellant raises the following three issues on appeal:

1. It was error to permit the expert testimony of Colleen Hunt when she was not qualified as an expert in regard to the medical and bruising testimony that she offered to the jury as well as impermissible medical opinions that she rendered without the proper foundation.

2. It was error to deny the Motion *in Limine* to exclude photographs of the [victim's] genital area. These photographs were inflammatory and[,] given the other testimony regarding the examination[,] had no independent evidentiary value and[,] as such[,] served only to inflame the minds and passions of the jury.

3. The evidence presented by the Commonwealth was insufficient to sustain the verdict of guilt as to Rape of a Mentally Disabled Person. There was insufficient evidence, physical or scientific, of intercourse or penetration or any other evidence sufficient to prove beyond a reasonable doubt this offense.

Appellant's Brief at 13.

Appellant's first two issues challenge the trial court's admission of evidence. Our standard of review concerning a challenge to the admissibility of evidence is as follows:

The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Johnson*, 42 A.3d 1017, 1027 (Pa. 2012) (citations and quotation marks omitted).

In his first issue, Appellant claims Ms. Hunt "exceeded the scope of her ability to competently testify when she provided 'expert testimony' to explain the bruising on the [victim], the collection [of], including the presence or absence of[,] DNA evidence, and types of trauma[,] such as blunt force trauma." Appellant's Brief at 14. Appellant argues that the court erred in permitting Ms. Hunt to offer her "specialized medical testimony, with conclusions that are far beyond an ordinary lay person's knowledge" when the Commonwealth did not offer her, and the court did not qualify her, as an expert. *Id.* at 14, 25. Appellant baldly asserts that this error prejudiced him because it bolstered the Commonwealth's theory of the case, and that the outcome of the case would have been different were it not for this error. *Id.* at 14-15.

It is axiomatic that, in order to advance a claim of error in a ruling to admit or exclude evidence, a party must make a specific and timely objection. *See* Pa.R.E. 103(a)(1). "We have long held that '[f]ailure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal.'" *Commonwealth v. Tha*, 64 A.3d 704, 713 (Pa. Super. 2013) (citing, among others, Pa.R.A.P. 302(a)).

Instantly, our review of the Notes of Testimony indicates that Appellant did not object contemporaneously at trial to Ms. Hunt providing what he has characterized as "expert testimony" on the specific grounds that Ms. Hunt was

exceeding the scope of her competency to testify. Moreover, Appellant has not directed this Court to the place in the record where he preserved this objection. We have identified only two places where Appellant objected to Ms. Hunt's testimony: (1) Appellant objected to Ms. Hunt answering the Commonwealth's question about whether an examiner obtains a DNA sample every time a victim alleges penetration took place on the grounds that Ms. Hunt had already answered the question; and (2) Appellant requested that the Commonwealth rephrase its question about age-dating bruises to include a "baseline." *See* N.T., 5/10/17, at 179, 196. Following the subsequent rephrasing, Ms. Hunt answered the Commonwealth's question without objection. In lodging these objections, Appellant did not assert the grounds that Ms. Hunt was improperly testifying as an expert. Because Appellant failed to object to Ms. Hunt providing "expert testimony,'" we conclude that Appellant has not preserved this claim.

Moreover, to the extent Appellant argues in his Brief that the trial court erred in permitting Ms. Hunt to provide testimony about the age of the victim's bruises on "baseline" grounds, we note that, at the time of the objection, Appellant requested that the Commonwealth rephrase its question about age-dating bruises. The Commonwealth complied, and Ms. Hunt responded to its question, without further objection from Appellant. Last, to the extent Appellant complains about Ms. Hunt's testimony regarding the possibility that "blunt force trauma" caused the victim's internal injuries, our review of the

Notes of Testimony indicates that Appellant did not object at trial to the admission of this testimony. These alternate claims are, thus, also waived.

In his second issue, Appellant asserts that the trial court erred in denying his pre-trial Motion *in Limine* to exclude the photographs of the victim's genital injuries. Appellant's Brief at 28-31. He argues that the photographs were cumulative of Ms. Hunt's testimony and, therefore, irrelevant. *Id.* at 28. He also claims that the photographs were inflammatory, prejudicial, and lacked probative value. *Id.*

"When reviewing a trial court's denial of a motion *in limine*, this Court applies an [ ] abuse of discretion standard of review." ***Commonwealth v. Schley***, 136 A.3d 511, 514 (Pa. Super. 2016) (citation omitted). "An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id.* (citation omitted).

When considering the admissibility of photographs of victims over the objection of a defendant, the trial court must engage in a two-part analysis:

> First, the court must determine whether the photograph is inflammatory. This Court has interpreted inflammatory to mean the photo is so gruesome it would tend to cloud the jury's objective assessment of the guilt or innocence of the defendant. Next, if the trial court decides the photo is inflammatory, in order to permit the jury to view the photo as evidence, it must then determine whether it has essential evidentiary value.

***Commonwealth v. Funk***, 29 A.3d 28, 33 (Pa. Super. 2011) (internal citations omitted).

- 10 -

Our review indicates that the certified record does not contain the photographs to which Appellant objects. Our Supreme Court has determined that when an appellant challenges the admissibility of photographs and the record does not contain the photographs, we cannot assess the appellant's description and his claim. ***Commonwealth v. Powell***, 956 A.2d 406, 423 (Pa. 2008). In finding waiver, the Supreme Court explained:

> An appellate court is "limited to considering only those facts that have been duly certified on appeal." ***Commonwealth v. Williams***, 552 Pa. 451, 715 A.2d 1101, 1103 (1998). The Rules of Appellate Procedure place the burden on the appellant to ensure that the record contains what is necessary to effectuate appellate review, and they provide procedures to address gaps or oversights in the compilation and transmission of the record. ***See generally***, Pa.R.A.P. Ch. 19.

***Id.***

Given the foregoing, Appellant has waived his claim regarding the trial court's admission of photographs.[10]

In his third issue, Appellant claims that the Commonwealth's evidence was insufficient to sustain his conviction of Rape of a Mentally Disabled Person. Appellant's Brief at 31-34.

This Court's standard of review of the challenge to the sufficiency of the evidence is well-settled:

---

[10] Even if Appellant had not waived this issue, it would not merit relief. The trial court explained that it found the photographs were a "fair and accurate representation of the anatomical area depicted" and not "inflammatory or unreasonably prejudicial." Trial Ct. Op., 10/22/18, at 11. The trial court properly exercised its discretion in admitting the photographs.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial [ ] in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced[,] is free to believe all, part or none of the evidence.

**Commonwealth v. Talbert**, 129 A.3d 536, 542-43 (Pa. Super. 2015) (citation omitted).

A person commits the offense of Rape of a Mentally Disabled Person when he "engages in sexual intercourse with a complainant . . . [w]ho suffers from a mental disability[,] which renders the complainant incapable of consent." 18 Pa.C.S. § 3121(a)(5).

Appellant concedes that the victim was incapable of consent, but argues that the Commonwealth did not introduce sufficient physical or scientific evidence of intercourse or penetration. Appellant's Brief at 32. He asserts that, in the absence of DNA evidence, Mr. Kparyel's testimony, as set forth *supra*, was not enough to sustain a guilty verdict. **Id.** at 33.

As noted above, the Commonwealth presented Mr. Kparyel's eyewitness testimony that he observed Appellant lying on the victim's bed between the

victim's raised legs. The victim's pajama bottoms were around her ankles and Appellant's pants were pushed down below his waist. After Mr. Kparyel discovered the assault, Appellant repeatedly apologized to Mr. Kparyel. In addition, Ms. Hunt testified that she observed lacerations and bruising inside the victim's vagina that were consistent with blunt force trauma, and stated that the victim was so highly agitated when she arrived at Riddle Memorial Hospital that she required sedation in order to undergo examination.

Our review of the record reveals that, viewing the totality of the evidence in the light most favorable to the Commonwealth as verdict-winner, the Commonwealth adduced sufficient direct and circumstantial evidence from which the jury could conclude that Appellant had penetrated the victim. Accordingly, Appellant's challenge to his conviction for the Rape of a Mentally Disabled Person is meritless.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/28/19