J-S25030-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MONICA NEELY | : | |
| | : | |
| Appellant | : | No. 1784 MDA 2019 |

Appeal from the Judgment of Sentence Entered July 31, 2019
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0004943-2017

BEFORE: LAZARUS, J., DUBOW, J., and KING, J.

MEMORANDUM BY DUBOW, J.:                    **FILED JUNE 16, 2020**

Appellant, Monica Neely, appeals from the July 31, 2019 Judgment of Sentence entered in the Berks County Court of Common Pleas following her conviction by a jury of Theft by Deception and Securing Execution of Documents by Deception.[1] Appellant challenges the sufficiency and weight of the evidence, an evidentiary ruling, and the discretionary aspects of her sentence. After careful review, we affirm.

**Factual and Procedural History**

The Commonwealth charged Appellant with the above offenses after Appellant accompanied, Robert Reddy ("Victim"), on 12 separate occasions between April 30, 2015, and May 26, 2015, to two local banks where the

_____

[1] 18 Pa.C.S. §§ 3922(a)(1) and 4114, respectively.

Victim made withdrawals totaling $25,900.[2]    At the time of the crime, Appellant was 48 years old and the Victim was 86 years old.

On March 21, 2019, the Commonwealth filed a Notice indicating its intent to present evidence pursuant to Pa.R.E. 404(b) regarding Appellant's theft of the Victim's car in 2015 and the resolution of related criminal charges.[3]

On April 16, 2019, Appellant filed a Motion in *Limine* to exclude: (1) the Rule 404(b) evidence; (2) reference to Appellant's drug use; (3) evidence of Appellant's probation status at the time of the instant crimes; and (4) any statement that Appellant's counsel is a public defender.  On April 28, 2019, the court granted Appellant's Motion to exclude any statement that she is on probation or that her counsel is a public defender.

On June 17, 2019, the court held a hearing on the outstanding issues raised in Appellant's Motion in *Limine*.  That same day, the Commonwealth filed a Notice of its  intent to present evidence pursuant to Rule 404(b) that the Victim purchased furniture for Appellant and paid her outstanding cable bill of approximately $2,230.[4]  Appellant made an oral motion to exclude that evidence on the record that day.

---

[2] The Commonwealth also charged Appellant with Receiving Stolen Property, 18 Pa.C.S. § 3925(a), but the jury acquitted Appellant of this offense.

[3] The Commonwealth dismissed the charges when Appellant reimbursed the Victim for the value of the car.

[4] This evidence was in the form of a collections letter addressed to the Victim for cable service at an address associated with Appellant.

On June 19, 2019, the trial court granted Appellant's Motion in *Limine* to exclude evidence of the 2015 car theft and reference to Appellant's drug use, but denied the motion to exclude evidence that the Victim paid Appellant's cable bill payment and purchased furniture.

Appellant's two-day jury trial commenced on June 24, 2019. The Commonwealth presented the testimony of Ms. Samantha Mali, Wyomissing Police Detective Courtney Garipoli, Berks County Detective Robert Heiden, Joshua Hartman of the Berks County Area Agency on Aging, Dr. Gary Champlin, a licensed clinical psychologist contracted by Berks County to perform capacity evaluations, and Pamela Blumer, a professional fiduciary. Appellant did not present any evidence or testimony.

Relevantly, the Commonwealth's evidence established that the following transpired. On April 22, 2015, the Victim opened a new Metro Bank checking account with a Fulton Bank cashier's check in the amount of $28,203.59. Between April 30, 2015, and May 26, 2015, the Victim made 12 cash withdrawals from that account, in increments of between $1,000 and $5,000 each, totaling $25,900. Ms. Mali witnessed the Victim make five or six of the withdrawals, always accompanied by Appellant. Each time Ms. Mali saw Appellant and the Victim in the bank branch they would walk in together, stop at the withdrawal slip table, take a withdrawal slip, and proceed to the teller station to complete the withdrawal.

On May 26, 2015, Ms. Mali reported the Victim's withdrawal as suspicious to security at her branch.[5]   She thought the withdrawal was suspicious because, *inter alia*, it was the second time in two or three days that Appellant and the Victim had visited her branch and made large withdrawals, and she had heard Appellant telling the Victim that the money was "for groceries."  Ms. Mali observed Appellant tell the Victim how much money he needed to withdraw and then Appellant filled out the withdrawal slip for the Victim to sign.

Detective Garipoli responded to Metro Bank's security call and spoke with Appellant.  He found her nervous and trembling.  Appellant indicated to Detective Garipoli that she was the Victim's nurse.  Appellant told Detective Garipoli that she had accepted money from the Victim in the past and expected the Victim to pay her that day.  Upon further questioning, Appellant admitted to Detective Garipoli that she was no longer in the nursing field.  Detective Garipoli contacted the Berks County Office of Aging after he completed his inquiries at the bank.

On April 25, 2015, Dr. Champlin performed a capacity evaluation of the Victim and diagnosed him with severe dementia.  Dr. Champlin opined that the Victim lacked legal capacity and was partially or totally unable to manage his financial resources or to meet essential requirements for his physical

---

[5] ***See*** N.T. 6/24/19, at 91.

health and safety.  As a result of Dr. Champlin's evaluation, the court appointed Pamela Blumer to represent the Victim's interests.

Ms. Blumer testified that she had heard Appellant direct the Victim to tell Ms. Blumer that "boyfriends are allowed to give their girlfriends gifts."[6] She also testified about the condition of the Victim's home, which she first visited in January 2015.  Between that time and her appointment as the Victim's guardian at the end of May 2015, the condition of the Victim's home was consistent.  She found it dusty and disorganized, with takeout boxes piled in a corner.  The Victim did not have any new or expensive clothing or furniture, and, in fact, used outdoor patio furniture in his living room.  It did not appear to Ms. Blumer that the Victim was using the kitchen, and there was very little food in the refrigerator.  The food that was there was inedible and some canned goods were expired.  Some of the Victim's medications had also expired.[7]

Ms. Blumer testified that Appellant introduced herself as the Victim's nurse.  However, with respect to the Victim's health, Ms. Blumer testified that she never saw Appellant provide the Victim with any medical care or any evidence that that the Victim had been receiving medical care at all.  In particular, the Victim was in renal failure, had a melanoma on his face that he

---

[6] N.T, 6/25/19, at 183-84.

[7] *See* N.T., 6/25/19, at 172-185.

was not tending to, and had a hernia that impeded his ability to sit comfortably. She also testified that she did not believe that the Victim was taking his prescribed heart medication.[8]

Mr. Hartman from the Berks County Area Agency on Aging testified that, during a conversation with Appellant on May 4, 2015, Appellant told him that she and the Victim planned to get married, but they had not yet set a wedding date.[9]

The Commonwealth also introduced documentary evidence that: (1) on May 7, 2015, the Victim issued a check to Unclaimed Freight in the amount of $2,947.86 for furniture, most of which the store delivered to Appellant's home address; (2) on May 27, 2015, the Victim issued a check to Giant Food Stores for $273;[10] and (3) the Victim was paying for an Xfinity cable package for Appellant's address. The evidence demonstrated that the Victim received a total of $1866 per month in income.[11] Therefore, the combined total of the above questionable purchases and 12 cash withdrawals would have left him

---

[8] **See** N.T., 6/25/19, at 176, 181, 187.

[9] **See** N.T, 6/25/19, at 193-94.

[10] According to the U.S. Department of Agriculture, in 2015 a single man of the Victim's age could expect to spend between $173 and $350 a month on groceries.

[11] The Victim received a check for $500 from social security, a $1300 pension, and a $66 dividend payment from Raymond James monthly. N.T., 6/25/19, at 180. He paid approximately $260 for health insurance and $350 to $400 for utilities monthly. **Id.**

more than $600 overdrawn for the month of May, before he had even paid any of his bills.

Following trial, the jury convicted Appellant of Theft by Deception and Securing Execution of Documents by Deception.

On July 31, 2019, the trial court sentenced Appellant to one to five years' incarceration with 20 days' credit for time served for her Theft by Deception conviction[12] and a concurrent term of 2 years' probation for her Securing Execution of Documents by Deception. The court also ordered Appellant to pay restitution in the amount of $23,900 to the Victim.

On August 12, 2019, Appellant filed a Post-Sentence Motion, which the trial court denied on October 3, 2019.

This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. Whether the Commonwealth failed to present sufficient evidence to support a verdict of guilty for the count of Theft by Deception, specifically, that the evidence failed to establish that [] Appellant obtained or withheld property from [the Victim] and that she did so by deception[?]

2. Whether the Commonwealth failed to present sufficient evidence to support a verdict of guilty for the count of Securing

---

[12] The court imposed a mandatory minimum sentence for Appellant's Theft by Deception conviction pursuant to 42 Pa.C.S. § 9717 (Sentences for offenses against elderly persons) because the Victim was over 60 years old and Appellant was under 60 years old. The statute provides for mandatory minimum sentence of 12 months' incarceration at the court's discretion "where the court finds justifiable cause and that finding is written in the opinion." 42 Pa.C.S. § 9717(a).

Execution of Documents by Deception, specifically that the evidence failed to establish that Appellant caused [the Victim] to execute an instrument affecting his pecuniary interest and that she did so by deception[?]

3. Whether the [t]rial [c]ourt abused its discretion when it permitted a guilty verdict that was against the weight of the evidence, where: the weight of the evidence showed that Appellant and [the Victim] were in a relationship and money that [the Victim] gave to Appellant, if any money was given, was a gift[?]

4. Whether the [t]rial [c]ourt erred when it allowed evidence [that the Victim] paid for furniture delivered to Appellant's address, where the evidence was not relevant to the facts disputed at trial and was substantially more prejudicial than probative[?]

5. Whether the [t]rial [c]ourt erred and abused its discretion when it sentenced Appellant to one (1) to five (5) years of incarceration, which is manifestly excessive under the circumstances of the case, considering the mitigating factors presented at sentencing and [the] rehabilitative needs of Appellant, as well as the protection of the public, [the] gravity of the offense, and the impact on the life of [the Victim] and the community[?]

Appellant's Brief at 10-11.

**Sufficiency of the Evidence**

Appellant's first two issues challenge the sufficiency of the Commonwealth's evidence in support of Appellant's convictions of Theft by Deception and Securing Execution of Documents by Deception.

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v.*

*Miller*, 172 A.3d 632, 640 (Pa. Super. 2017) (internal quotation marks and citations omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." *Id.* "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." *Id.*

### Theft by Deception

Under Pennsylvania law, "[a] person is guilty of theft if [s]he intentionally obtains or withholds property of another by deception." 18 Pa.C.S. § 3922(a). Relevantly, under the Crimes Code "[a] person deceives if [s]he intentionally . . . creates or reinforces a false impression, including false impressions as to law, value, intention[,] or other state of mind[.]" *Id.* at 3922(a)(1).

In challenging the sufficiency of the Commonwealth's evidence in support of her Theft by Deception conviction, Appellant claims that the Commonwealth failed to prove that she received—by deception or otherwise— any of the money that the Victim withdrew from his accounts. Appellant's Brief at 23-25. She claims, without citation to the record, that the evidence showed that the Victim "received all of the money taken out of the account at the bank." *Id.* at 24-25. Appellant asserts that the Commonwealth's evidence only established that she accompanied the Victim to the bank for a series of

transactions, not that she received any of the money or that she filled out or signed bank withdrawal slips on the Victim's behalf. *Id.* at 25.

She further avers that the Commonwealth failed to offer evidence that she was aware of the Victim's diminished mental capacity and asserts, without citation to case law that, "[p]rior to May 28, 2015[,] it is presumed that [the victim] was competent as no[] court finding had been made that [the Victim] was unable to act on his own behalf." *Id.* Last, Appellant asserts that Detective Garipoli's testimony established Appellant's defense that she had been assisting the Victim with running errands and as a driver, and that she expected the Victim to give her an unspecified amount money on May 26, 2015, as reimbursement for her time and expenses. *Id.*

Following our review of the Commonwealth's direct and circumstantial evidence in the light most favorable to the Commonwealth as verdict-winner, we conclude that the Commonwealth presented sufficient evidence from which the jury could find every element of the crime beyond a reasonable doubt. In particular, the Commonwealth offered evidence that Appellant repeatedly accompanied the Victim to the bank where she directed him to and assisted him with withdrawing money from his checking account. The evidence demonstrated that the Victim had not been spending the money that he withdrew on himself because he used outdoor patio furniture in his living room, did not have expensive clothes and furniture, and had almost no edible food in his home. Instead, the evidence that the Victim bought Appellant her groceries and new furniture and paid her cable bill established that Appellant

was the only person who benefitted from the withdrawals. It was also reasonable for the jury to infer from the evidence that Appellant was lying about the nature of her relationship with the Victim and for the jury to discount the possibility that Appellant was either a nurse or romantic partner to the Victim. In light of the foregoing, we conclude that the Commonwealth adduced sufficient evidence to support Appellant's conviction of Theft by Deception. Accordingly, this claim fails.

**Securing the Execution of Documents by Deception**

In her second issue, Appellant claims that the Commonwealth failed to prove every element of the offense of Securing the Execution of Documents by Deception. Appellant's Brief at 26.

Under the Crimes Code, a person is guilty of Securing Execution of Documents by Deception if she "causes another to execute any instrument affecting or purporting to affect or likely to affect the pecuniary interest of any person." 18 Pa.C.S. § 4114.

Appellant argues that the Commonwealth did not present evidence to establish that she deceived the Victim thereby causing him to execute an instrument affecting his pecuniary interest. Appellant's Brief at 26, 28. She asserts that she and the Victim had "established a close relationship" and he referred to her as his girlfriend. *Id.* at 28. She concedes that the Victim "was in a better financial situation than [her] in 2015," but argues that the Victim was merely "doting on" her and that the Commonwealth failed to prove that there was anything "inherently bad about these transactions." *Id.* at 28-29.

She blames lack of societal support for a relationship between a woman of her age and a man of the Victim's age for engendering suspicion against her. ***Id.*** at 29.

In large part, Appellant's arguments pertain to the weight the trial court gave to the evidence, which we discuss in detail *infra.* To the extent that Appellant challenges the sufficiency of the Commonwealth's evidence, we observe that the credible evidence indicated that: (1) the Victim was suffering from dementia and could not make decisions on his own behalf; (2) Appellant instructed the Victim to tell Ms. Bulmer that boyfriends can give girlfriends gifts; (3) Appellant helped the Victim fill out bank withdrawal slips and provided the reason for the withdrawal, *i.e.*, for groceries; (4) the contents of the Victim's kitchen belied Appellant's reason for the withdrawal; and (5) the Victim spent more than $200 at Giant Food Stores the day after making a large withdrawal from his checking account ostensibly for groceries.

In light of this evidence, the jury's decision to discount the possibility that Appellant was acting either as the Victim's nurse or as his romantic partner and to conclude that Appellant caused the Victim to execute bank withdrawal slips in a way that affected his pecuniary interest was reasonable. Consequently, the evidence was sufficient to prove every element of the offense of Securing Execution of Documents by Deception, and Appellant is not entitled to relief.

**Weight of the Evidence**

In her third issue, Appellant challenges the weight the jury gave to the evidence in support of both of her convictions. She argues that the jury should have weighed more heavily her assertion that the money she received from the Victim was a gift because, at the time of the withdrawals, no one had determined that the Victim was not competent to manage his finances. Appellant's Brief at 30. She further argues that the Victim "should be presumed competent on the dates in question because they [precede] any diagnosis[.]" *Id.* at 31.

In addressing an appellant's weight claim, we apply the following principles. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (quotation marks and citation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, *supra* at 546.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this Court does not review the underlying question of whether the verdict is against the weight of the evidence. *See id.* at 545-46. "Because the trial judge has had the opportunity to hear and see the evidence

presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence." *Id.* at 546. "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id.*

Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* (internal quotation marks and citation omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion[.]" *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (citations and emphasis omitted).

"[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Thompson*, 106 A.3d 742, 758 (Pa. Super. 2014). For that reason, the trial court need not view the evidence in the light most favorable to the verdict winner, and may instead use its discretion in concluding whether the verdict was against the weight of the evidence. *Widmer*, 744 A.2d at 751 n.3.

Instantly, the jury credited the testimony of the Commonwealth's witnesses and did not credit Appellant's theory of the case that Appellant was

either the Victim's nurse or girlfriend and the Victim willingly gave her almost $24,000. Appellant essentially asks this Court to reassess the credibility of the Commonwealth's witnesses and Appellant, and reweigh the testimony and evidence presented at trial. We cannot and will not do so. Our review of the record shows that the evidence is not tenuous, vague, or uncertain, and the verdict was not so contrary as to shock the court's conscience. Accordingly, we discern no abuse of discretion in the trial court's denial of Appellant's weight claim.

**Evidentiary Issue**

In her fourth issue, Appellant asserts that the trial court erred in denying her Motion in *Limine* to preclude admission of evidence that the Victim paid for furniture delivered to Appellant's address and for her outstanding cable bill because that evidence was more prejudicial than probative. Appellant's Brief at 34. Appellant argues that this evidence—payments for purchases in amounts not corresponding to the amounts of the bank withdrawals—established merely that the Victim was innocently doting on his girlfriend. *Id.* at 34-35. In other words, she claims that the bank withdrawals and the cable bill payment and furniture purchase were "two separate and distinct courses of action that had no bearing on each other," and the payments and purchases did not make any "fact in connection with the bank withdrawals more or less probable." *Id.* at 36. She asserts that this evidence unfairly prejudiced her because it reinforced society's bias against younger women who date older

men, merely confirming the jury's predisposition to believe that this made her a bad person. *Id.* at 35.

"When reviewing a trial court's denial of a motion in *limine*, this Court applies an [ ] abuse of discretion standard of review." **Commonwealth v. Schley**, 136 A.3d 511, 514 (Pa. Super. 2016). "An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." **Id.** (citation omitted).

Relevance is the threshold for admissibility of evidence. **Commonwealth v. Cook**, 952 A.2d 594, 612 (Pa. 2008). Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Pa.R.E. 401; **Commonwealth v. Serge**, 896 A.2d 1170, 1177 (Pa. 2006). "Evidence that is not relevant is not admissible." Pa.R.E. 402.

Pennsylvania Rule of Evidence 404(b) prohibits evidence of a defendant's prior acts "to prove a person's character" or demonstrate "that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). Nevertheless, the Rule further provides that prior acts evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). "In a criminal case, this

evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

Also known as the "complete story" exception, Rule 404(b) permits the admission of evidence of other acts "to complete the story of the crime on trial by providing its immediate context of happenings near in time and place." **Commonwealth v. Lark**, 543 A.2d 491, 497 (Pa. 1988). The court is not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged[.]" **Id.** at 501.

In the instant case, the Commonwealth sought to introduce evidence that the Victim made a large furniture purchase for Appellant and paid her outstanding cable bill in anticipation of her defense and as part of the totality of the relationship between Appellant and the Victim. N.T., 6/17/19, at 10-11, 20-22. The trial court agreed that its admission was permissible for this purpose.

Following our review, we conclude that the trial court did not abuse its discretion in admitting the contested evidence. The evidence was relevant to show the complete financial relationship between Appellant and the Victim.

Moreover, the trial court properly concluded that the probative value in providing the jury with this complete picture outweighed the potential prejudice to Appellant, especially in light of the limiting instruction it provided to the jury. **See Commonwealth v. Roney**, 79 A.3d 595, 640 (Pa. 2013)

(explaining that reviewing courts presume that the jury has followed the trial court's instructions).[13]  Accordingly, the trial court did not abuse its discretion in admitting this evidence and Appellant is, thus, not entitled to relief on this claim.

**Discretionary Aspects of Sentencing**

In her final issue, Appellant claims that the trial court failure to consider properly mitigating factors resulted in the imposition of an excessive sentence. Appellant's Brief at 38-39.  Appellant complains that the court should have weighed more heavily: (1) the deaths of her husband and son; (2) her uncontrollable drug use; (2) her prior employment as a trauma nurse; (4) her mental health diagnoses of depression, anxiety, and PTSD; and (5) her close relationship with her daughters and grandchildren.  *Id.*  Appellant concedes that her sentence is within the standard range, albeit at the top.  *Id.* at 38. Last, Appellant asserts that the trial court did not place sufficient reasons on

---

[13] In its closing argument, the Commonwealth informed the jury that it was not to consider the evidence "as thefts," but rather to understand the "entire financial picture between the two."  N.T., 6/25/19, at 242.  The trial court also gave a limiting instruction to the jury during its charge, stating:

> [D]uring the course of this trial you heard evidence regarding the purchase of furniture at Unclaimed Freight and also an unpaid invoice from Comcast.  You're only to consider this evidence for one purpose, and one purpose only, and that is to consider it to complete the story of the relationship between [the Victim] and [Appellant].  You are not to consider this evidence as part of the alleged theft as averred by the Commonwealth.

*Id.* at 263.

the record explaining why it found "cause" to impose a mandatory minimum sentence for her Theft by Deception conviction. *Id.* at 39. These issues challenge the discretionary aspects of sentencing.

Challenges to the discretionary aspects of sentencing are not automatically reviewable as a matter of right. *Commonwealth v. Hunter*, 768 A.2d 1136, 1144 (Pa. Super. 2001). Prior to reaching the merits of a discretionary sentencing issue, we must determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief sufficiently addresses the challenge in a statement included pursuant to Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006).

Appellant has complied with the first requirement by filing a timely notice of appeal.

With respect to the second requirement, our review of Appellant's Post-Sentence Motion indicates that she did not raise a claim that the court did not place adequate reasons on the record supporting its imposition of a mandatory minimum sentence. Thus, the latter claim is waived. *See Commonwealth v. Tejada*, 107 A.3d 788, 798-99 (Pa. Super. 2015) (noting that the trial court must be given the opportunity to reconsider its sentence either at sentencing or in a post-sentence motion). *See*, *e.g.*, *Commonwealth v. Mann*, 820 A.2d 788, 793-94 (Pa. Super. 2003) (holding that defendant waived

discretionary aspects of sentencing claim regarding sentencing court's failure to state the reasons for his sentence on the record where defendant filed a post-sentence motion, but only argued that his sentence was unduly severe and the trial court abused its discretion under the sentencing code).

Appellant did, however, preserve her claim that the court failed to consider mitigating factors by raising this issue in her Post-Sentence Motion and including it in a statement pursuant to Pa.R.A.P. 2119(f).  Thus, we proceed to address whether Appellant presents a substantial question.

Whether an appellant has raised a substantial question regarding discretionary sentencing is determined on a case-by-case basis. *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010).  "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (citation and quotation omitted).

Claims that the sentencing court did not adequately consider mitigating factors generally do not raise a substantial question.  *Commonwealth v. Disalvo*, 70 A.3d 900, 903 (Pa. Super. 2013).  *See also Commonwealth v. Williams*, 562 A.2d 1385, 1388 (Pa. Super. 1989) (*en banc*) (explaining that "an allegation that the sentencing court failed to consider or did not adequately consider various factors is, in effect a request for this court to substitute its judgment for that of the lower court in fashioning appellant's

sentence . . . [and] does not raise a substantial question that the sentence imposed was in fact inappropriate."); ***Commonwealth v. Cannon***, 954 A.2d 1222, 1228–29 (Pa. Super. 2008) (finding no substantial question raised by a claim that the trial court failed to consider the defendant's rehabilitative needs, age, and educational background); ***Commonwealth v. Coolbaugh***, 770 A.2d 788, 792-93 (Pa. Super. 2001) (finding no substantial question raised by a claim that the probation revocation sentence failed to take into consideration the defendant's rehabilitative needs and was manifestly excessive where sentence was within statutory guidelines and within sentencing guidelines); ***Commonwealth v. Coss***, 695 A.2d 831, 833-34 (Pa. Super. 1997) (holding that, when the sentence imposed falls within the statutory limits, an appellant's claim that a sentence is manifestly excessive fails to raise a substantial question).

Applying the above precedent, we conclude that Appellant's request—that the court weigh her various unfortunate personal circumstances differently—does not raise a substantial question. She has, thus, failed to invoke the jurisdiction of this Court.

**Conclusion**

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/16/2020