COMMONWEALTH of Pennsylvania, Appellee,

v.

Charles F. HOLDER, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 1, 2002.
Filed Jan. 17, 2003.

Jeanette D. Dickerson, Norristown, for appellant.

Adrienne Duval, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before JOYCE, OLSZEWSKI, JJ., and CIRILLO, P.J.E.*

OPINION BY OLSZEWSKI, J.:

¶ 1 Charles F. Holder successfully appealed this Court's order affirming his judgment of sentence for rape, simple assault, and aggravated assault. On remand, we affirm the judgment.

¶ 2 As stated by our Supreme Court, the pertinent facts of this case are:

On August 1, 1998, Mary Wright reported to Hatboro police that Appellant had raped her in her apartment. Appel-

---

* Cirillo, P.J.E. did not participate in the consideration or decision of this case.

lant was subsequently arrested and charged with [a variety of related crimes.] ... In light of the fact that Appellant was on probation for a prior criminal conviction, he was sent to prison awaiting a probation revocation hearing, i.e., a Gagnon hearing. *See Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656[ ] (1973).

During his Gagnon hearing ..., Appellant tried to introduce evidence of a prior false rape allegation by Wright. Specifically, Appellant wanted to offer evidence that a week prior to this incident, after a night of drinking, Wright awoke in the middle of the night and asked [her friend] Michael Hunter, "Did you rape me last night?" Appellant intimated that he wanted to use Wright's prior rape allegation to discredit her testimony that she trusted Appellant because he was Hunter's friend, by showing that she actually did not even trust Hunter. The Gagnon hearing judge, Judge William Carpenter, ruled that this evidence was inadmissible, citing the rape shield law and hearsay rules. Judge Carpenter subsequently revoked Appellant's probation.

After Appellant's trial for the rape and assault of Wright was scheduled, Appellant filed a pretrial motion ... to allow him to admit the same evidence that Judge Carpenter had previously excluded at the Gagnon hearing.... [T]he trial judge, Judge Paul Tressler, issued an order stating that Judge Carpenter's earlier ruling precluded a contradictory ruling and, therefore, that Appellant was collaterally estopped from relitigating the identical issue during trial.

*Commonwealth v. Holder,* 569 Pa. 474, 805 A.2d 499, 500–01 (2002) (footnote omitted).

¶ 3 When he first appeared before this Court, appellant challenged the trial judge's ruling that collateral estoppel

barred him from reaching a different conclusion than the *Gagnon* judge about the Michael Hunter incident. We concluded that the doctrine had been correctly applied, and affirmed. *Commonwealth v. Holder,* 765 A.2d 1156 (Pa.Super.2001). On review, the Supreme Court affirmed this conclusion, but remanded the case for us to review the *Gagnon* ruling, thence the suppression ruling, on its merits. *Commonwealth v. Holder,* 569 Pa. 474, 805 A.2d 499 (2002).

¶ 4 The testimony that appellant sought to impeach at the *Gagnon* hearing was the following:

[Defense counsel]: And had you not wanted to be with [appellant], you could have easily just closed the door [when he left your house] and not let him come back; is that correct? Is that not correct?

[Mary Wright]: I didn't think I had anything to fear. What would I have to fear? He never did anything bad to me. He was a friend of Mike's. I knew Mike for eight years. I guess he's cool. Mike wouldn't be putting me in danger's way.

Appellant's brief at 6; N.T. *Gagnon* Hearing, 11/18/98, at 65–66. In chambers, defense counsel revealed what he wanted to impeach her with in the following proffer:

[Defense counsel]: Michael Hunter, when called to testify, would testify that one week—approximately one week prior to the rape allegation in this case, Ms. Wright accused him—actually she was so—she couldn't even remember. Basically, she asked Mr. Hunter, Did you rape me last night, because she didn't really remember.

· · ·

The Court: Is not the purpose of the evidence you're seeking to introduce

through her answers and possibly through this other witness an attack on her credibility, believability, truthfulness?

[Defense counsel]: Yes, Your Honor....

N.T. *Gagnon* Hearing, at 70–72. As mentioned earlier, the court ruled that the proffered testimony was barred by the rape shield statute. *Id.* at 75.

¶ 5 The pertinent part of the rape shield statute states that "[e]vidence of specific instances of the alleged victim's past sexual conduct ... shall not be admissible in prosecutions under this chapter...." 18 Pa.C.S.A. § 3104(a). Here, the lower court applied the statute to bar evidence of Mary Wright's interrogatory to Michael Hunter.

¶ 6 Our standard of review:

A trial court's ruling on the admissibility of evidence of the sexual history of a sexual abuse complainant will be reversed only where there has been a clear abuse of discretion. "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused."

*Commonwealth v. Allburn,* 721 A.2d 363, 366 (Pa.Super.1998) (citations omitted) (quoting *Commonwealth v. Spiewak,* 533 Pa. 1, 617 A.2d 696, 697 (1992)).

¶ 7 Appellant relies on *Commonwealth v. Johnson,* 536 Pa. 153, 638 A.2d 940 (1994), for the proposition that the rape shield statute could not apply to Michael Hunter's proposed testimony because, if she was a victim of another rape, that was not "conduct" covered by the statute. In *Johnson,* the appellant was charged with the sexual assault of his ten-year-old niece, Nicole. She testified that he led her into a secluded area of a park and sexually assaulted her. Further, while appellant was assaulting her, a person named Hameen "slapped [her] on the back of the head and threatened to tell her mother." *Id.* at 941. On cross-examination at trial, Nicole admitted that she was afraid of Hameen, but denied that he had ever sexually assaulted her. Hameen also denied that he ever had.

¶ 8 Appellant testified that, at the park, Nicole told him that "Hameen was bothering her," and that he had yelled at Hameen for this and then left the park. *Id.* The appellant also sought to introduce testimony of another of his nieces, Tovana, that "Nicole told Tovana that Hameen had pulled her into the alley and touched her in a place she did not like, and it hurt." *Id.* One purpose of this proposed testimony was to "bolster the appellant's theory and impeach the credibility of Nicole and Hameen." *Id.* at 942. The trial court ruled that the testimony was barred by the rape shield law. Our Supreme Court held this to be error:

The purpose of the Rape Shield Law is to prevent a sexual assault trial from denigrating into an attack upon the victim's reputation for chastity. In the instant case, the testimony proffered through Tovana did not concern the past sexual conduct of Nicole. Evidence that Nicole had been subject to a previous sexual assault would not reflect upon Nicole's reputation for chastity. To be a victim is not "conduct" of the person victimized. It would be illogical to conclude that the Rape Shield Law intended to prohibit this type of testimony.

*Id.* Similarly, in this case, Wright's interrogatory could only show that she was possibly the victim of another sexual assault, making her the victim. As the subject was not her own conduct, her chastity

could not be called into question by Michael Hunter's proposed testimony. Therefore, the rape shield law was inapplicable, and it was error for the *Gagnon* hearing judge to exclude this evidence on that basis. This means that it was error for the trial judge to exclude this evidence on that basis.[1]

 ¶ 9 However, this evidence was properly excluded because it was not relevant. In *Johnson*, as here, appellant argued "that the testimony is material as it concerns the credibility of" the Commonwealth's witnesses. *Id.* But "a witness

may not be contradicted on a collateral matter." *Id.* (quoting *Commonwealth v. Fisher*, 447 Pa. 405, 290 A.2d 262, 267 (1972)). There, the matter was collateral because a previous allegation that Hameen sexually abused Nicole did not bear directly on whether or not appellant did.

¶ 10 *Fisher* provides another example. There, the prosecution impeached appellant at trial with his pretrial suppression testimony that his signed statement had been beaten out of him by the police. As appellant did not raise the issue of voluntariness at trial, however, the Supreme

---

1. The Commonwealth does not address *Commonwealth v. Johnson*, 536 Pa. 153, 638 A.2d 940 (1994). Instead, it relies on *Commonwealth v. Boyles*, 407 Pa.Super. 343, 595 A.2d 1180 (1991), which in turn, relies on *Commonwealth v. Black*, 337 Pa.Super. 548, 487 A.2d 396 (1985). Although the rape shield statute bars Michael Hunter's proposed testimony under these cases, they are unhelpful because neither addresses the question in terms of being a victim of sexual assault not being "conduct."

In *Black*, the appellant was convicted of the sexual assault of his daughter. She provided the only direct evidence of the act at trial, and the trial court excluded evidence that she had been having a sexual relationship with her brother and that, as a result, the appellant had forced him to leave their home. The appellant sought to introduce this evidence to demonstrate the daughter's bias against him, her motive to testify against him as retribution, and her motive to have him removed from the home so that the brother could return to her.

This Court compared the rape shield statute to the federal Supreme Court's Sixth Amendment confrontation clause jurisprudence on laws that shield juvenile records from being revealed at trial. Noting the similarity of purpose between laws that shield juvenile records and those that shield a witness' sexual conduct, we concluded, "the Rape Shield Law may not be used to exclude relevant evidence showing witness' bias or attacking credibility." *Black*, 487 A.2d at 401.

In *Boyles*, the victim testified that she never met the appellant, a serviceman, before the day on which the appellant sexually assaulted her. At trial, he sought to introduce testimo-

ny that the victim had made other allegations of sexual assaults. This Court noted:

> Although the court in *Black* stated that evidence attacking the victim's credibility could not be excluded under the Rape Shield Law, the attack on the victim's credibility in that case was based on the victim's possible bias against and hostility toward the defendant and her motive to fabricate. In later cases, this Court has applied the holding of *Black* only where the victim's credibility was allegedly affected by bias against or hostility toward the defendant, or the victim had a motive to seek retribution.

*Boyles*, 595 A.2d at 1186. As there was no evidence that the victim was biased against or hostile to the appellant, or that she had a motive to seek retribution, the rape shield statute prevented this impeachment testimony. Under these cases, Mary Wright's interrogatory to Michael Hunter would be properly excluded because "there was no evidence, other than the conduct that forms the basis of the charges filed in this case, that the victim was biased against or hostile toward the appellant or had a motive to seek retribution." Appellee's Brief at 11. In his reply brief, appellant does not contest this point, and our own review of the record reveals no bias or hostility between the parties until he raped her. Without *Johnson*, these cases would be the end of our inquiry.

That case, however, was decided by the Supreme Court, where *Black* and *Boyles* are Superior Court cases, and it is more recently decided. Further, it addresses Mary Wright's status as a victim of the uncharged sexual assault. Therefore, our analysis properly centers on that case.

Court found the beating issue to be a collateral matter and ruled that it was error for the trial judge to admit it. *Id.* at 267.

¶ 11 We find Mary Wright's interrogatory to Michael Hunter about a possible rape to also be a collateral matter. That possible rape by Michael Hunter bears no more on the issue of appellant's alleged rape than Hameen's alleged assault on Nicole. The Michael Hunter issue, therefore, was collateral; and Mary Wright could not be impeached with it.[2]

 ¶ 12 The lower court did not err when it excluded Michael Hunter's proposed testimony.[3]

¶ 13 The judgment of sentence is AFFIRMED.

---

2. Further, we fail to see how testimony that Mary Wright thought that Michael Hunter may have raped her would make her allegation of appellant's rape more or less likely. It was also inadmissible because it was not relevant. Pa.R.E. 402.

3. "The Superior Court may affirm the action of the trial court for reasons other than those given by the trial judge." *Strickler v. Huffine,* 421 Pa.Super. 463, 618 A.2d 430, 436 (1992).